UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JANIE STERLING,<br>   Plaintiff, | : | |
| v. | : | 3:10-cv-1119 (WWE) |
| FARRAN AND EZEDINE, LLC d/b/a TOWN<br>& COUNTRY AUTO CENTER and LEASE<br>AND RENTAL MANAGEMENT CORP.<br>d/b/a AUTO LOAN,<br>   Defendants. | : | |

## RULING ON DEFAULT JUDGMENT

Default having entered against defendant Farran and Ezedine, LLC d/b/a Town & Country Auto Center ("Town & Country") on November 15, 2010 (Doc. #9), plaintiff Janie Sterling now moves for default judgment against Town & Country pursuant to Federal Rule of Civil Procedure 55(b)(2) (Doc. #10).[1]

The Court possesses jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

## BACKGROUND

On a motion for default judgment, the court construes all well-pleaded allegations in the complaint as admitted. <u>Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.</u>, 109 F.3d 105, 108 (2d Cir. 1997).

Plaintiff Sterling is a consumer living in Connecticut. Defendant Town & Country is an automobile dealership in New Britain, Connecticut. On January 22, 2010, plaintiff visited Town & Country with her stepmother and expressed an interest in purchasing a 2005 Toyota Solara. Town & Country told plaintiff that she could secure a loan at 19%

---

[1] Plaintiff filed a notice of voluntary dismissal as to all claims against Lease and Rental Management Corp., d/b/a Auto Loan on November 3, 2010 (Doc. #7).

1

interest provided that her stepmother agreed to be the primary signer on the retail installment sales contract. Plaintiff did not agree and left the dealership.

Michael Molnar, owner of Town & Country, called plaintiff back later that day and told her that she could get a loan for the vehicle at an interest rate of 11.99%. Relying upon that, plaintiff returned to the dealership. Plaintiff gave Town & Country $5,000 as a down payment on the vehicle in reliance on Molnar's representation. The sale was subject to a sixty-day, 3,000-mile warranty.

Town & Country employees prepared a retail purchase order and retail installment sales contract for the vehicle. Plaintiff signed the contract, but Town & Country failed to provide her with a copy.

Approximately three hours after accepting delivery, the check engine light lit up. The following day, plaintiff brought the car to a mechanic who assessed the vehicle. The mechanic found numerous problems regarding the brakes and other components which rendered the vehicle unsafe to drive. Plaintiff contacted Town & Country, informed them of the problems and demanded they return her down payment. Town & Country instructed plaintiff to bring the vehicle back and assured her that the vehicle would be fixed. Plaintiff took the vehicle back to Town & Country and provided a list of problems. Plaintiff told Town & Country that if the car was not repaired satisfactorily, she would want her money returned.

Town & Country returned the vehicle on January 28, 2010 and told plaintiff that the vehicle was completely fixed. Representatives of defendant also told her that the check engine light was not a problem and would go away in a few days.

On February 1, plaintiff had the vehicle assessed by a car detailer and a

Meineke dealer. The detailer told plaintiff that Molnar told him that it looked as though water had been getting into the vehicle. Meineke told plaintiff that the car appeared to have been in an accident prior to its sale.

That same day, plaintiff called Town & Country and complained to a secretary named Lisa about the condition of the car. In response, Lisa told plaintiff that she was a "big girl" and should have had the vehicle evaluated before she purchased it. Lisa also told plaintiff that there were documents that needed to be signed for the loan to be complete. When plaintiff told Lisa that she could not make it to Town & Country, Lisa asked if plaintiff wanted her to forge her signature on the paperwork. Plaintiff instructed Lisa not to do so. At this time, plaintiff realized that the finance charge on the contract was 19%, not 11.99% as had been promised.

On February 2, plaintiff visited Town & Country and met with Lisa to speak about the loan. Plaintiff told Lisa of her dissatisfaction with the vehicle and demanded that Town & Country take it back and return the down payment. Lisa told plaintiff that she would have Molnar call her back.

On February 4, Lisa called plaintiff and told her that Molnar refused to take back the vehicle. Lisa told plaintiff that she had purchased the vehicle "as is" and that she should have had the vehicle checked by a mechanic before purchase.

The next day, plaintiff sent Town & Country a letter explaining the issues with the vehicle, expressing her dissatisfaction and demanding her money back. On February 12, plaintiff brought the vehicle to Town Fair Tire to be inspected. Town Fair Tire discovered six nails in one of the rear tires and noticed that it appeared as though someone had tried to fix the issue without success. Because Town Fair Tire deemed

the tire to be dangerous to drive on, plaintiff had them switch the tire with a spare tire.

On February 16, plaintiff attempted to apply the brakes when they failed resulting in an accident. The next day, plaintiff brought the vehicle to a mechanic to have it evaluated. The mechanic determined that the vehicle had been in a previous accident and had not been fixed properly prior to its sale to plaintiff.

On March 23, plaintiff brought the vehicle to an authorized Toyota dealer who examined the vehicle and found several problems with it. He concluded that Town & Country should not have delivered the vehicle to plaintiff in such a condition because it was too dangerous to drive.

On April 9, plaintiff received a telephone call from a man claiming to be an investigator hired by Town & Country. The man threatened to have plaintiff arrested if she refused to disclose the location of the vehicle to Town & Country.

On May 5, plaintiff's attorneys sent on plaintiff's behalf a letter to Town & Country notifying them of plaintiff's claims and revoking acceptance of the vehicle. Plaintiff demanded that she be refunded $5,000 in exchange for the vehicle.

The complaint alleges claims against Town & Country for violations of the federal Truth in Lending Act, 15 U.S.C. § 1640 ("TILA"), the federal Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, the Connecticut Retail Installment Sales Financing Act, Conn. Gen. Stat. § 36a-771 ("RISFA"), the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110 et seq. ("CUTPA"), and the Creditor Collections Practices Act, Conn. Gen. Stat. § 36a-645. Plaintiff also asserts claim for negligent misrepresentation, fraudulent misrepresentation, breach of implied warranty of merchantability, fraud and revocation of acceptance.

## DISCUSSION

The Court will address the claims in seriatim.

I.  **Appropriateness of Default Judgment**

Plaintiff commenced this action with the filing of a complaint on July 16, 2010. A copy of the complaint and summons was served on Town & Country on October 13, 2010 by a state marshal who left it with the manager of Town & Country. On November 10, after the time limit prescribed by Fed. R. Civ. P. 12(a)(1)(A) passed, plaintiff filed for entry of default. Plaintiff moved for entry of default judgment on December 1, and Town & Country has still not yet filed a notice of appearance or a responsive pleading. Therefore, entry of default judgment is appropriate.

II.  **Claim Under the Truth in Lending Act**

"The primary purpose of TILA is to promote the informed use of credit." Frazee v. Seaview Toyota Pontiac, Inc., 695 F. Supp. 1406, 1407 (D. Conn. 1988); see also Poulin v. Balise Auto Sales, 2010 U.S. Dist. LEXIS 33456 (D. Conn. Apr. 5, 2010). According the legislative history, TILA "requires creditors to disclose credit terms in a uniform manner and ... all additional mandatory charges to be included in the computation of the finance charge." Mourning v, Family Publications Serv., 411 U.S. 356, 364 (1972). In doing so, "the consumer is given the information needed to compare the cost of credit and make an informed buying decision." Frazee, 695 F. Supp. at 1407-08. The Act requires "creditors to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights." Beach v. Ocwen Federal Bank,

523 U.S. 410, 412 (1998). TILA addresses disclosure and does not regulate consumer credit. Rendler v. Corus Bank, 272 F.3d 992, 996 (7th Cir. 2001). Automobile dealers should be held liable under TILA "only for defects that are apparent on the face of the disclosure statement." Poulin, 2010 U.S. Dist. LEXIS 33456 at *6.

Federal regulations govern the nature of the disclosure process. Regulation Z requires that the creditor make disclosures "clearly and conspicuously in writing, in a form that the consumer may keep." 12 C.F.R. § 226.17(a)(1). Further, the disclosure must be made "before consummation of the transaction." 12 C.F.R. § 226.17(b).

Plaintiff's affidavit establishes that she was not provided with a copy of the contract prior to the consummation of the vehicle. Therefore, Town & Country is liable under TILA.

Pursuant to 15 U.S.C. § 1640(a), the Court may award damages against Town & Country for actual damages sustained by plaintiff, twice the amount of any finance charge in connection with the sale (not to exceed $1,000) and reasonable attorney's fees.

Although there has been a violation of TILA, the Court declines to award any actual damages under the Act. The gravamen of plaintiff's complaint and the source of her injuries is the fact that the automobile was unfit and unsafe for use; it was not that the interest rate in the parties' contract was wrong or that the contract was not presented at the time of the purchase. Plaintiff has made only the initial down payment on the car in the amount of $5,000 and has not paid any finance charges or any interest or made any other payments since then. Therefore, actual damages on the TILA claim are not warranted. The Court will address statutory damages on her TILA claim below.

### III. Claim Under the Retail Installment Sales Finance Act

A violation of TILA also constitutes a violation of RISFA. See Tirado v. Ofstein, 2008 Conn. Super. LEXIS 667, *38) (Conn. Super. Ct. Mar. 14, 2008). Plaintiff seeks a declaration, pursuant to Conn. Gen. Stat. § 36a-786, that there is no entitlement to a finance charge under the contract. The Court agrees, that based on the allegations of the complaint, it is apparent that Town & Country's RISFA violations, specifically section 36a-771, were willful. Therefore, the Court hereby finds that plaintiff has no responsibility to pay any finance charges arising under the contract.

### IV. Fraud Claim

A claim for fraud requires a plaintiff to establish (1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon the false representation to his injury. Solano v. Calegari, 108 Conn. App. 731, 741, cert. denied, 289 Conn. 943 (2008). The Court finds that the allegations of the complaint and plaintiff's affidavit sufficiently establish the elements of a claim for fraud under Connecticut law insofar as Town & Country made a false representation relating to the finance charge to induce plaintiff to purchase the vehicle.

The Court will award damages on her fraud claim.

### V. Claim Under the Magnuson-Moss Warranty Act

The MMWA grants relief to a consumer "who is damaged by the failure of a ... warrantor ... to comply with any obligation ... under a written warranty." 15 U.S.C. § 2310(d)(1). "The MMWA makes a warrantor directly liable to a consumer for breach

of a written warranty." Diaz v. Paragon Motors of Woodside, 424 F. Supp. 2d 519, 540 (E.D.N.Y. 2006). When drafting a written warranty, a warrantor must "fully and conspicuously disclose in simple and readily understood language [its] terms and conditions." 15 U.S.C. § 2302(a); see also Motor Vehicle Mfrs. Ass'n, Inc. v. Abrams, 899 F.2d 1315, 1317 (2d Cir. 1990).

Plaintiff's affidavit establishes that defendant Town & Country failed to comply with the terms of its written warranty related to the 60-day, 3,000-mile warranty. Therefore, damages, including attorneys' fees as permitted under the MMWA, are appropriate.

## VI.  Claim Under the Connecticut Unfair Trade Practices Act

CUTPA provides, in relevant part, that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a). A CUTPA violation occurs when a defendant's conduct occurs in the performance of a trade and commerce, which is defined as "the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state." Conn. Gen. Stat. § 42-110a(4). The Connecticut Supreme Court has adopted the following factors known as the "cigarette rule" to determine whether a trade practice is unfair or deceptive:

> (1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statute, the common law, or otherwise - whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of

>unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers, competitors, or other businessmen.

A-G Foods, Inc. v. Pepperidge Farm, Inc., 216 Conn. 200, 215 (1990). A simple breach of contract does not constitute a violation of CUTPA; the plaintiff must also show substantial aggravating circumstances. Bruce v. Home Depot, U.S.A., Inc., 308 F. Supp. 2d 72, 77 (D. Conn. 2004).

Plaintiff has established a claim under CUTPA by demonstrating that Town & Country's actions offended public policy in acting fraudulently with respect to plaintiff's vehicle insofar as it did not repair her car and did not accept her revocation of the sale.

### VII. Claim Under the Creditor Collections Practices Act

The CCPA bars any creditor from using "any abusive, harassing, fraudulent, deceptive or misleading representation, device or practice to collect or attempt to collect any debt." Conn. Gen. Stat. § 646. Although the Court was unable to find any precedent under the CCPA, the federal Fair Credit Reporting Act ("FCRA") has been held to bar misleading representations contained within a complaint filed in the course of a litigation. See Donohue v. Quick Collect, Inc., 592 F.3d 1027, 1032 (9th Cir. 2010) ("[C]omplaint served directly on a consumer to facilitate debt-collection efforts is a communication subject to the requirements of §§ 1692e and 1692f."). The Court believes that because the regulations promulgated pursuant to the CCPA are modeled after the FCRA, cases interpreting the FCRA are instructive to interpreting the CCPA. Compare 15 U.S.C. § 1692e (listing examples of false, deceptive and misleading representations), with Conn. Agencies Regs. § 36a-647-6 (same).

In her complaint, plaintiff asserts that Town & Country violated CCPA by bringing

9

a claim against plaintiff on March 1, 2010 to collect $5,000 and that the complaint contained false statements. In her motion for default judgment, plaintiff expands the basis for her CCPA claim to include the phone call from the investigator who claimed to be hired by Town & Country.

As to the call from the investigator, because this was not included as a basis for relief in the complaint, the Court will not issue judgment on it. Further, as to the claim relating to Town & Country's suit, the Court does not have sufficient information as to this action to issue judgment on it. Therefore, the Court finds that plaintiff has not met her burden to sustain a CCPA claim.

**VIII.    Other Claims Asserted in the Complaint**

Plaintiff's motion in support of default judgment does not address her claims for negligent or fraudulent misrepresentation, and the Court will not enter judgment in favor of plaintiff on those claims.

**IX.    Damages**

Plaintiff seeks actual damages in the total amount of $6,058.51. This total reflects $5,000 paid to Town & Country as a down payment, $645 in car rental expenses and $413.51 in inspection costs.

Under Second Circuit precedent, a party's default is not considered an admission of damages. Cablevision of S. Conn. Ltd. P'ship v. Smith, 141 F. Supp. 2d 277, 282 (D. Conn. 2001). "Damages, which are neither susceptible of mathematical computation nor liquidated as of the default, usually must be established by the plaintiff in an evidentiary proceeding in which the defendant has the opportunity to contest the

amount." Greyhound Exhibitgroup v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). Plaintiff's motion for default judgment included evidentiary support for her claim for damages sufficient for the Court to award damages.

The Court will award plaintiff reimbursement of her down payment and her inspection costs. The Court will not, however, award plaintiff the $645 in car rental expenses because there is no discussion of any car rental in the complaint or the motion for default judgment or any supporting documents. Therefore, plaintiff will be awarded $5,413.51 in actual damages.

Plaintiff also seeks statutory damages based on her TILA and CCPA claims. Because the Court did not find Town & Country liable on CCPA's claim, it will not award plaintiff statutory damages. TILA permits the Court to award statutory damages "in the case of an individual action twice the amount of any finance charge in connection with the transaction" up to $1,000. 15 U.S.C. § 1640(a)(2)(A)(i). Courts have ruled that even where a plaintiff has not suffered any actual damages, statutory damages remain appropriate. See Kurz v. Chase Manhattan Bank, 273 F. Supp. 2d 474, 478 (S.D.N.Y. 2003); see also Grant v. Imperial Motors, 539 F.2d 506, 510 (5th Cir. 1976). Because plaintiff has demonstrated a violation of TILA, she is entitled to $1,000 in statutory damages because the contemplated finance charge was $7,066.80.

Plaintiff also seeks an award of punitive damages under CUTPA. Conn. Gen. Stat. § 42-110g. To award such punitive damages, the "evidence must reveal a reckless indifference to the rights of others or an intentional and wanton violation of those rights." Tessmann v. Tiger Lee Construction Co., 228 Conn. 42, 54 (1993). The evidence before the Court demonstrates that Town & Country was recklessly indifferent

to plaintiff insofar as it sold her a lemon, failed to repair it, assured her that it was safe and then refused to allow her to return it as permitted by law. Punitive damages of three times plaintiff's actual damages are appropriate. This total is $16,240.53.

Therefore, the full award of damages to plaintiff is $22,654.04. Interest on this judgment shall accrue at 10% per annum as set forth in Conn. Gen. Stat. § 37-3a(a).

## X. Attorneys' Fees

A successful plaintiff may be awarded reasonable attorneys' fees and costs under TILA and CUTPA. 15 U.S.C. § 1640(a)(3) (TILA); Conn. Gen. Stat. § 42-110g(d) (CUTPA). Plaintiff seeks $8,000 in attorneys' fees and costs. According to the declaration of Attorney Daniel S. Blinn, Attorney Blinn performed 6.5 hours of work on this matter at an hourly rate of $325, Attorney Matthew W. Graever performed 15.8 hours of work at an hourly rate of $200 and Lori Lessard, a paralegal, performed 4.3 hours of work at an hourly rate of $120. Attorney Blinn also states that his firm has incurred $619.74 in expenses and he anticipates that he will incur fees of $1,000 in collection of the judgment.

After reviewing Attorney Blinn's declaration, the Court will deduct 1.8 hours from Attorney Graever's time because there is an insufficient basis for him to have billed time doing research at the Department of Motor Vehicles. Therefore, the Court will award attorneys' fees for Attorney Blinn in the amount of $2,112.50 (6.5 hours * $325), for Attorney Graever $2,800.00 (14 hours * $200) and for Lessard $516 (4.3 hours * $120) for a total of $5,428.50 plus $750 for fees incurred in collecting the judgment. The total attorneys' fees award is $6,178.50. The Court will award full costs of $619.74.

## XI. Revocation of Acceptance of the Vehicle

Plaintiff's affidavit also demonstrates that she has properly revoked acceptance of the vehicle pursuant to Conn. Gen. Stat. §§ 42a-2-608, 42a-2-711 and 42a-2-721. Because the Court will award plaintiff damages in the form of her down payment, she is not equitably entitled to keep the vehicle. Plaintiff is therefore ordered, upon Town & Country's satisfaction of the judgment to return the vehicle to Town & Country. Should Town & Country not satisfy the judgment within sixty days of the filing of the judgment, unless the parties reach a separate agreement, plaintiff will be permitted to sell the car. She may keep all proceeds of the sale to satisfy the judgment as well as cover any administrative costs incurred in selling the vehicle. Any proceeds in excess of the judgment plus administrative costs shall be turned over to Town & Country.

## CONCLUSION

Consistent with the foregoing, the Court hereby GRANTS plaintiff's motion for default judgment (Doc. #10). Plaintiff is awarded $22,654.04 in damages plus interest pursuant to Conn. Gen. Stat. § 37-3a(a), $6,178.50 in attorneys' fees and $619.74 in costs. Plaintiff is permitted to sell the vehicle as detailed above should Town & Country fail to satisfy the judgment within sixty days from the filing of judgment in this matter. The Clerk is instructed to close this case.

Dated at Bridgeport, Connecticut, this 20th day of January, 2011.

/s/
Warren W. Eginton
Senior United States District Judge